AUSTIN TERM, 1883.

No. 2797.

HAYWOOD POTTS *v.* THE STATE.

26 663;
36 363

1. PRACTICE—EVIDENCE—PREDICATE.—As a predicate for the oral repro-duction of the testimony given before an examining court by a since deceased witness, the State proved the death of the witness, and that in all probability the record of his testimony had been destroyed by a fire which consumed other records deposited in the court house. *Held* that the predicate was sufficient.

2. SAME.—If unable to repeat the language of the deceased witness, the witness called to reproduce his evidence may, under the rule which ob-tains in this State, testify to the substance of his testimony.

3. SAME—THEFT—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—By the reproducing witness (the trial being for the theft of a gun) the State proved that deceased witness, on the examining trial, testified to cer-tain transactions concerning the gun which transpired between him-self and one Stanley, the agent of the defendant, when the said Stanley, acting for the defendant, offered the gun for sale. *Held* that, as tend-ing to elucidate the subsequent connection of both the deceased wit-ness and the defendant with the gun, the evidence was properly ad-mitted. But see the opinion for the substance of newly discovered evi-dence *held* to have demanded of the trial court the award of a new trial.

APPEAL from the District Court of Bastrop. Tried below be-fore the Hon. L. W. Moore.

The conviction in this case was for the theft of a gun, of the value of forty-five dollars, from H. Perkins, who was holding the same for W. W. Knowls, the owner of the same. The pen-alty assessed was a term of two years in the penitentiary.

W. W. Knowls was the first witness for the State. He testi-fied that he was the owner of the gun described in the indict-ment. On or about November 27, 1876, the said gun, without the knowledge or consent of the witness, was taken from the possession of H. Perkins, who then had the custody of the same. Witness did not see it again until about five weeks later, when, at the conclusion of the examining trial of the defendant, the gun was returned to him by the sheriff of Bastrop county.

H. Perkins testified, for the State, substantially as did the witness Knowls, and in addition said that the defendant stayed

all night at his house on the night of the theft, sleeping with two of the workmen on the place, in the room from which the gun was taken. He came to the house with a wagon and team, peddling buffalo meat. He left soon after breakfast on the next morning, the witness failing to miss the gun for a short time thereafter. Witness attended the examining trial of the defendant five or six weeks later and heard the testimony of Constable Smithson, now deceased, delivered on that trial. Smithson testified on that trial that he sent word to the defendant that he was desirous of purchasing such a gun as he had heard he, defendant, had for sale, and to bring it to Elgin for him to examine; that one Stanley brought the gun to him, Smithson, in Elgin, but he refused to buy it from Stanley upon the ground that the price was exhorbitant, but requested Stanley to leave the gun in a certain store, and to request defendant to come to town, as he thought he and defendant could make a trade. Accordingly Stanley left the gun in the store, and a few days later the defendant came to town, claimed the gun and offered to sell it to said Smithson, who then arrested the defendant. This witness repeated that Smithson testified that defendant claimed the gun before he, Smithson, arrested him, and on this point the witness Perkins was corroborated by the witness Miles, who gave the same general but a briefer statement of Smithson's testimony.

Justice of the Peace Hearn testified, for the State, that he held the examining trial of the defendant, and reduced all of the testimony to writing, which he turned over to C. B. Maynard, clerk of the district court, and had never seen since. Smithson testified on that trial, in substance, that somebody brought the gun to him, but he declined to have anything to do with it unless it was brought to him or claimed by the defendant, and that when the defendant claimed it, a few days later, he arrested him.

C. B. Maynard, clerk of the district court of Bastrop county, testified, for the State, that he often saw in his office the papers which comprised the proceedings of the examining court in this case, but had not seen them since the burning of the court house and the said office in 1883, when a great many papers and records were burned.

Sheriff Jenkins testified, for the State, that the defendant broke jail a short time after the examining trial, and remained at large about a year, when he surrendered. The gun described

in the indictment was delivered to witness by Smithson, and witness delivered it to Knowls at the conclusion of the examining trial.

The defense offered no testimony. but asked for a new trial upon the ground of newly discovered evidence which is sufficiently stated in the opinion of the court.

No brief for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. As a predicate for the reproduction of his testimony it was proven that Smithson, the main prosecuting witness who testified at the examining trial, was dead, and also that the testimony taken in writing at said trial, including Smithson's, was in all probability destroyed in the fire which burnt up the Bastrop court house. No error was committed in permitting the witnesses Perkins and Hearn, who had heard Smithson testify at said trial, to reproduce the deceased witness's testimony. And whatever the former rule on the subject may have been, it is now well settled that, to reproduce testimony given at a former trial by a witness who has since died, the person called to prove it may state its substance if unable to repeat its precise language. (Simms v. The State, 10 Texas Ct. App., 132, and authorities cited.) As part of Smithson's testimony, what transpired between himself and Stanley, who brought the gun to him for sale, was competent and necessary to elucidate and explain the subsequent connection of both Smithson and defendant with the gun, which was left by Stanley in a store house at Elgin, at the instance of Smithson, to await defendant's coming, and we can not see that the court erred in admitting the testimony.

The witnesses who reproduced Smithson's testimony stated that Smithson had sworn on the examining trial that, when defendant came to Elgin, he claimed the gun as his property, and that Smithson then arrested him for theft of the gun. This portion of the testimony with regard to defendant's claim of the gun was the most damaging evidence against him. ·

. In his motion for new trial, defendant set up newly discovered evidence, to wit, the evidence of one Pinkard, a deputy sheriff of the county, who was present when the arrest took place, and who in his affidavit stated in substance that nothing

was said by defendant or Smithson about the gun before the arrest, and that defendant did not claim the gun before or after his arrest.

Looking to the circumstances attending the case, the fact that Smithson was dead—that several years had elapsed since his testimony was given at the examining trial—that the proposed new testimony was that of a witness who was himself present at the time of the occurrence, and who from his official position would likely remember what criminative facts transpired—that the testimony as given was from parties who were not present, and who were relying upon their recollection of what another said about it—taking, we say, all these facts into consideration, we think the court should have granted the new trial in order that defendant might have the opportunity to avail himself of such newly discovered evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*